BARRY J. PORTMAN
Federal Public Defender
MANUEL U. ARAUJO,
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA 95113
Telephone: (408) 291-7753

Attorneys for Defendant
VERGARA-PEREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00595- JF |
| Plaintiff, | ) ) | NOTICE OF MOTION; DEFENDANT |
| | ) | OSIEL VERGARA-PEREZ'S MOTION TO |
| v. | ) | DISMISS INDICTMENT DUE TO |
| | ) | UNLAWFUL DEPORTATION; |
| OSIEL VERGARA-PEREZ, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES; DECLARATIONS; |
| Defendant. | ) | EXHIBITS |
| | ) | |
| | ) | Hearing Date:     June 18, 2008 |
| | ) | Hearing Time:     9:00 a.m. |

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . 4

        A.    Background and Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        B.    Convictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        C.    The Removal Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              1.    The Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              2.    The Removal Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
              3.    The Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
              4.    Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.    Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              1.    Due Process and Collateral Challenges to Deportations in Criminal
                    Prosecutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
              2.    8 U.S.C. § 1326(d) and Collateral Challenges to Deportations in
                    Criminal Prosecutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Mr. Vergara-Perez Was Not Convicted of an Aggravated Felony. . . . . . 10

        C.    The IJ Erred and Violated Mr. Vergara-Perez's Due Process Rights in
              Ordering Him Removable Without Advising Him of His Eligibility for
              Cancellation of Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              1.    Section  INA § 240A(a)(3) Relief . . . . . . . . . . . . . . . . . . . . . . 12
              2     The IJ Erred in Failing to Advise Mr. Vergara-Perez of His
                    Eligibility for § 240A(a)(3) Relief . . . . . . . . . . . . . . . . . . . . . 13

        D.    Mr. Vergara-Perez Exhausted His Administrative Remedies . . . . . . . . . 13

        E.    Mr. Vergara-Perez Was Deprived of a Meaningful Opportunity for Judicial
              Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        F.    Mr. Vergara-Perez Suffered Prejudice as a Result of the Defect in his
              Removal Hearing Because He Had Plausible' Ground for Relief from
              Deportation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Matter of Arreguin,*
21 I. & N. Dec. 38 (BIA 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Barker v. Wingo,*
407 U.S. 514 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brewer v. Williams,*
430 U.S. 387 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Matter of Davis,*
20 I. & N. Dec. 536 (BIA 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Matter of Edwards,*
20 I. & N. Dec. 191 (BIA 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Foroughi v. INS,*
60 F.3d 570 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Giorgiu v. INS,*
90 F.3d 374 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Matter of Yanez-Garcia,*
23 I. & N. Dec. 390, 2002 WL 993589 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Matter of KVD*,
22 I. & N. Dec. 1163 (BIA 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kahn v. INS,*
36 F.3d 1412 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lopez v. Gonzales,*
595 U.S. 47, 127 S. Ct. 625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pablo v. INS,*
72 F.3d 110 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Rivers v. Roadway Express, Inc.,*
511 U.S. 298, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tawadrus v. Ashcroft, 364* F. 3d 1069 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Aguirre-Tello,*
324 F.3d 1181 (10th Cir. 2003), *reversed on other grounds,* 353 F.3d 1199
(10th Cir. 2004) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Ahumada-Aguilar,*
295 F.3d 943 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Arce-Hernandez,*
163 F.3d 559 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Arrieta*,
224 F.3d 1076 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 18

*United States v. Corrales-Beltran*,
192 F.3d 1311 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Esparza-Ponce*,
193 F.3d 1133 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Estrada-Torres*,
179 F.3d 776 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Figueroa-Campos*,
494 F.3d 1211 (9th Cir. July 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Godinez-Rabadan*,
289 F.3d 630 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hinajosa-Lopez*,
130 F.3d 691 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jimenez-Marmolejo*,
104 F.3d 1083 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 14, 17

*United States v. Mendoza-Lopez*,
481 U.S. 828 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12, 13

*United States v. Muro-Inclan*,
249 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Pallares-Galan*,
359 F.3d 1088 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 20

*United States v. Ubaldo-Figueroa*, ,
347 F.3d at 718, 722 (9th 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 18

*United States v. Ubaldo-Figueroa*,
364 F.3d 1042 (9th Cir. 2004) (internal quotations omitted) 8, 9, 12, 15

## FEDERAL STATUTES

8 C.F.R. § 240.49(a) (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. 242.17 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6 U.S.C. § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6 U.S.C. § 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8 U.S.C. § 212(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. § 1101(a)(43)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

1

8 U.S.C. § 1182(c) ........................................................ 10

8 U.S.C. § 1229a(a) ...................................................... 3, 11

8 U.S.C. § 1326 ........................................................ 2, 7, 8

INA § 240A(a) ........................................................... 3, 11

INA § 240A(a), Title 8 U.S.C. § 1229a(a) .................................. 2, 5, 6, 10

Pub.L. No. 104-208, § 304(b), 110 Stat. 3009-597 (1996) ........................... 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   BARRY J. PORTMAN
    Federal Public Defender
2   MANUEL U. ARAUJO,
    Assistant Federal Public Defender
3   160 West Santa Clara Street, Suite 575
    San Jose, CA 95113
4   Telephone: (408) 291-7753

5   Attorneys for Defendant
    VERGARA-PEREZ

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9             FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11  UNITED STATES OF AMERICA,          )   No. CR 07-00595- JF
                                       )
12              Plaintiff,             )   NOTICE OF MOTION;  DEFENDANT
                                       )   OSIEL VERGARA-PEREZ'S MOTION TO
13         v.                          )   DISMISS INDICTMENT DUE TO
                                       )   UNLAWFUL DEPORTATION;
14  OSIEL VERGARA-PEREZ,               )   MEMORANDUM OF POINTS AND
                                       )   AUTHORITIES; DECLARATIONS;
15              Defendant.             )   EXHIBITS
                                       )
16  _____)
                                           Hearing Date: June 18, 2008
17                                         Hearing Time:      9:00 a.m.

18     TO:   UNITED STATES ATTORNEY AND ASSISTANT UNITED STATES ATTORNEY

19  BENJAMIN T. KENNEDY:

20

21         PLEASE TAKE NOTICE that on June 18, 2008, at 9:00 a.m., or as soon thereafter as

22  counsel may be heard, in the courtroom of the Honorable Jeremy Fogel, United States District

23  Court Judge, defendant OSIEL VERGARA-PEREZ, will bring on for hearing the following

24  motion:

25

26

27

28

                                           1

**MOTION**

Defendant Osiel Vergara-Perez, by and through his attorney of record, Assistant Federal Public Defender Manuel U. Araujo, hereby moves this Honorable Court for an Order dismissing the indictment based upon a denial of due process because the Immigration Judge failed to advise Mr. Vergara-Perez of statutory right to seek relief from removal pursuant to Cancellation of Removal for Certain Permanent Residents ("Cancellation"). INA § 240A(a), Title 8 U.S.C. § 1229a(a). This failure to advise Mr. Vergara-Perez of his statutory right and the failure to provide him an opportunity to present the claim, meaningfully deprived him of his right to judicial review. Because of the denial of due process, Mr. Vergara-Perez's order of removal cannot be used as evidence in this criminal prosecution for being "found in" the United States without permission after having been removed from this country. Without this evidence, the government cannot demonstrate an essential element of the offense charged. Accordingly, dismissal is appropriate.

This motion is based upon the attached memorandum of points and authorities, declarations, exhibits, all files and records in this case, and such further evidence and argument as may be presented at the hearing on this motion.

Respectfully submitted,

DATED:  May 15, 2008                    By_____/S/_____
                                        Manuel U. Araujo,
                                        Assistant Federal Public Defender

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Immigration Court on July 31, 1998, ordered Mr. Osiel Vergara-Perez (hereinafter "Mr. Vergara-Perez") removed from the United States because he had been convicted of a drug felony under the law of Colorado.  However, Mr. Vergara-Perez's July 28, 1998, drug conviction was for simple possession which under the law as it stood in 1998, was not a felony under Federal Law, and not an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B)[1].  Because his state conviction was not a drug trafficking offense, he was eligible for the remedy of a Cancellation of Removal from the United States.  However, Mr. Vergara-Perez was not given the opportunity to apply for a cancellation of removal and was ordered removed from the United States.

Mr. Vergara-Perez is charged with one count of being found in the United States after deportation/removal, in violation of 8 U.S.C. § 1326.  A defendant charged with a violation of 8 U.S.C. § 1326 may collaterally challenge the removal order on which the criminal charge against him is based if his due process rights were violated and he suffered prejudice as a result thereof. Mr. Vergara-Perez cannot be convicted of violating 8 U.S.C. § 1326 because a defect in his underlying removal proceedings violated his right to due process.

Pursuant to 8 U.S.C. § 1326(d) and the cases interpreting that statutory subsection, in order to successfully challenge an underlying removal order in the criminal proceeding, the following must be true: (1) the defendant either exhausted his administrative remedies or did not knowingly and intelligently waive his appellate rights, (2) the defendant was effectively deprived of judicial review of the order of removal, and (3) the defect at his removal hearing prejudiced him.

---

[1]  8 U.S.C. § 1101(a)(43)(B), the term aggravated felony means – illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).

3

1      At the time of his July 31, 1998, hearing Mr. Vergara-Perez had been in the United States

2  for thirteen years, and had been lawfully in the United States for nearly nine years.   Nevertheless,

3  the Immigration Judge (IJ) failed to advise Mr. Vergara-Perez that he was eligible for relief from

4  deportation in the form of a Cancellation of Removal pursuant to  INA § 240A(a) of the

5  Immigration and Nationality Act (INA), codified at  8 U.S.C. § 1229a(a) (hereinafter,

6  "Cancellation".)  Mr. Vergara-Perez had sufficient equities in favor of Cancellation of removal,

7  but he was not given the opportunity to present and develop said equities because of the

8  Immigration Judge's failure to properly advise him.  The failure to properly advise him of his

9  statutory right to seek cancellation of removal deprived him of his right to due process .

10

11      The failure of the immigration judge to advise Mr. Vergara-Perez of his eligibility for relief

12  not only violated his due process rights, but also relieved him of his obligation to exhaust his

13  administrative remedies and deprived him of a meaningful opportunity for judicial review.

14  Moreover, Mr. Vergara-Perez was prejudiced by the error at his removal proceeding, because it is

15  plausible – indeed it is likely, given the substantial equities in his favor – that he would have been

16  granted relief, if only he had been given the opportunity to apply.

17

18      The underlying removal violated Mr. Vergara-Perez's constitutional rights and cannot be

19  used to prove an essential element of the charged offense, namely, a valid removal/deportation.

20  Accordingly, the Indictment cannot stand, and the Court should dismiss it with prejudice.

21

22                    **II.**

23       **FACTUAL AND PROCEDURAL BACKGROUND**

24

25  **A.**    **Background and Status**

26      Mr. Vergara was born on September 19, 1969, in Quimichatenco, Mexico [Exhibit A: Birth

27  Certificate and translation.]  Mr. Vergara first entered the United States on or before January 1985.

28  Mr. Vergara was first admitted as a Temporary Resident Status on or about February 23, 1989,

1   through the Special Agricultural Worker program ("SAW") [Exhibit B: Application for Temporary

2   Resident Status.]  Mr. Vergara's immigration status was ultimately adjusted to that of a Lawful

3   Permanent Resident (commonly knows as a "green-card holder") on December 1, 1990 through

4   SAW in Detroit, Michigan [Exhibit C.]

5

6        In 1998, Mr. Vergara-Perez had been a lawfully admitted for permanent residence for over

7   seven years.  Nothing in his file indicates that he had not continuously resided in the United States

8   for seven years, and as Mr. Vergara-Perez's declaration points out, he had lived in the United

9   States from the time he arrived in 1985, until his 1998, removal. [Exhibit D.]  In fact, it appears

10  that Mr. Vergara-Perez had been in lawful status for approximately nine years since obtaining

11  Temporary Resident Status. [Exhibit B and Exhibit C.]

12

13       Mr. Vergara registered for Selective Service on September 28, 1988, even before obtaining

14  lawful status in the United States. [Exhibit E.]  It appears from the Social Security Administration

15  Earnings Records that by July 31, 1998, Mr. Vergara had relatively continuous lawful gainful

16  employment during his residency in the United States. [Exhibit F.]   Additionally, the 1998 record

17  of the removal proceeding contains no reference to a criminal conviction other than the single

18  conviction that led to his arrest and removal proceedings in July 1998. [Exhibit G: Declaration of

19  César R. Ternieden.]

20

21     Lastly, in 1998, Mr. Vergara had relevant family ties in the United States, from which a sister

22  Maria Elvia Flores, is a Untied States citizen [Exhibit H]; a brother, Areli Vergara, is a Lawful

23  Permanent Resident [Exhibit I]; and a sister, Urbana Molina, is a Lawful Permanent Resident

24  [Exhibit J].  Equally important is the fact that Mr. Vergara-Perez has lived continuously in the

25  United States since the age of fifteen years.  He was a long term Lawful Permanent Resident in the

26  United States, at the time of his removal.

27

28

**B. Convictions**

On or about June 9, 1998, Mr. Vergara-Perez was charged in connection with two counts in the Second Judicial District Court at Denver, Colorado: Count I: Distribution of a Controlled Substance, to wit, Heroin, in violation of C.R.S. § 18-18-405(1)(a) and (2)(a)(I) (a class 3 Felony); and Count II: Possession of a Controlled Substance, to wit, Heroin, in violation of C.R.S. § 18-18-405(1)(a) and (2)(a)(I) (a class 3 Felony) [Exhibit L: Copy of Complaint.] On July 8, 1998, Mr. Vergara-Perez pled guilty to Count II *only*, that is, possession of a Controlled Substance. [Exhibit M: A certified transcript of the guilty plea dated July 8, 1998.] The Court placed him on 5 years of probation. [Exhibit N, a certified transcript of July 28, 1998 sentencing hearing.] The Court dismissed Count I which alleged distribution of a controlled substance. Although Mr. Vergara-Perez was informed by Hon. Lynn Martinelli that his criminal conviction "will be a felony drug conviction," would be subject to deportation and that "[t]he condition of [his] probation would be that [he] cooperate in the deportation proceeding," Mr. Vergara-Perez was not informed of any further substantive right at his anticipated immigration proceedings [Exhibit N, pg. 3].

As more fully discussed herein, the conviction for the simple possession of heroin, is not a drug trafficking felony which precludes an alien from seeking relief from removal pursuant to a Cancellation of Removal under INA § 240A(a)[2].

**C. The Removal Proceeding**

**1. The Charges**

On June 10, 1998, an Immigration Detainer was lodged with the Denver County Jail to detain the Mr. Vergara-Perez. [Exhibit O: Form I-247.] On July 14, 1998, a Notice to Appear was served on him. [*See* Exhibit P, Notice to Appear (Form I-265). The Record of Deportable Alien charged

---

[2]  Title 8 U.S.C. § 1229a(a).

that Mr. Vergara-Perez was subject to removal for having been convicted of possession of a

controlled substance. [*See* Exhibit Q.] No additional convictions were alleged. [*See* Exhibit Q.]

### 2.    The Removal Hearings

On July 31, 1998, Mr. Vergara-Perez appeared without counsel before an IJ. The Immigration

Judge conducted a group hearing with several other aliens. The Immigration Judge specifically

informed all those present: "Those with drug conviction are not eligible for voluntary departure.

And even though you are permanent residents, there is no waiver available to allow you to keep

your green card. . . . So if any one want to apply for voluntary departure you may raise your hand,

or if you have a question about your immigration status or about getting a visa through a family

member you may raise your hand[3]." [*See* Exhibit R: pg. 6, Recorded Tape of Hearing dated July

31, 1998.]

Mr. Vergara specifically asked the Immigration Judge: "Can I come back to the U.S. if I get

married because I have my fiancee here . . . ." [*See* Exhibit R, pg. 7.] The Immigration Judge

answered: "No, Sir, this is a felony drug conviction and there is no relief available to you and

there is no possibility for you to come back as long as that [the state felony drug conviction] is on

your record." [*Id*. at page 7.] This advisement, as will be discussed herein, was in error and clear

violation of the law as it stands today and as it stood in 1998.

### 3.    The Appeal

Once ordered removed, Mr. Vergara was informed of his right to appeal and he reserved that

right. However, on August 4, 1998, Mr. Vergara, through Deportation Officer Homero Mendoza,

waived his right to appeal. [Exhibit S.] Mr. Vergara's waived his right to appeal because upon

reflection and based on the Immigration Judge's advisement that he had no remedy from

---

[3] The audio tape recording of the hearing will be lodged as Exhibit K, should the Court
desire to hear the recording.

1   deportation due to his felony drug conviction he concluded an appeal was without merit.

2   Therefore, he decided to waive his right to appeal.   [Exhibit D, ¶ 10.]  However, had he been

3   correctly advised that for Immigration purposes his July 8, 1998, conviction did not exclude him

4   from discretionary relief from removal, he would have petitioned for Cancellation of removal and

5   if his petition had been denied, he would have proceeded forward with his appeal. [Exhibit D, ¶

6   10.]

7

8       **4.      Removal**

9

10      On August 4, 1999, Mr. Vergara-Perez was removed from the United States. [*See* Exhibit T,

11  Warrant of Removal.]  Thereafter, Mr. Vergara-Perez returned to the United States.

12

13                                    **III.**

14                                **ARGUMENT**

15  **A.      Legal Standards**

16

17      **1.      Due Process and Collateral Challenges to Deportations in Criminal Prosecutions**

18

19      The elements of the offense of being "found in" the United States in violation of 8 U.S.C. §

20  1326 are: (1) the defendant is an alien; (2) the defendant was deported/removed from the United

21  States; and (3) the defendant voluntarily reentered and remained in the United States without the

22  consent of the Attorney General.[4]  *United States v. Godinez-Rabadan*, 289 F.3d 630, 632 (9th Cir.

23  2002).  In *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), the Supreme Court held that a

24  defendant charged under § 1326 may collaterally attack the validity of his predicate deportation if

25  the proceeding did not conform with due process.  *Id.* at 838-39.  The Court found that due process

26  _____

27          [4]  The Attorney General's protection of the borders and immigration enforcement function
    were transferred to the Secretary of the Department of Homeland Security (DHS) in March 2003.
28  *See* 6 U.S.C. § 202. *See also* 6 U.S.C. § 557 (providing that relevant references in Federal law
    entrusting other departments with functions which were transferred to the DHS via the Homeland
    Security Act of 2002 are deemed transferred to Secretary of DHS).

1  mandates the permitting of "a collateral challenge to the use of a deportation proceeding as an

2  element of a criminal offense . . . where the deportation proceeding effectively eliminates the right

3  of the alien to obtain judicial review." *Id.*  The reason for allowing the collateral attack is that the

4  determination in the "administrative proceeding is to play a critical role in the subsequent

5  imposition of a criminal sanction." *Id.* at 837-38.  The Supreme Court explained that if Congress

6  envisioned that "a court may impose a criminal penalty for [illegal] reentry after any deportation,

7  regardless of how violative of the rights of the alien the deportation proceeding may have been, the

8  statute does not comport with the constitutional requirement of due process." *Id.*

9

10  **2.  8 U.S.C. § 1326(d) and Collateral Challenges to Deportations in Criminal**

11  **Prosecutions**

12

13  Following *Mendoza-Lopez*, Congress enacted 8 U.S.C. § 1326(d), which imposes certain pre-

14  requisites for collateral attacks to the underlying deportation(s) in illegal re-entry prosecutions.

15  That provision requires that such collateral attacks will succeed where the defendant

16  administratively appealed his deportation order, *see* 8 U.S.C. § 1326(d)(1)), was deprived of

17  meaningful judicial review of the deportation, *see* 8 U.S.C. § 1326(d)(2), and entry of the

18  deportation order was fundamentally unfair.  *See* 8 U.S.C. § 1326(d)(3).

19

20  "An underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process

21  rights were violated by defects in his underlying deportation proceeding, and (2) he suffered

22  prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, (9th Cir.

23  2004) (as amended) (quoting *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir.

24  1998)) (internal quotations omitted).

25

26  For purposes of analytic clarity, the above requirements will be discussed in the following

27  order:  the defendant was not convicted of an aggravated felony, his due process rights were

28

1  violated, he is excused from exhaustion of his administrative remedies, he was deprived of judicial

2  review, and he was prejudiced.

3

4  **B.  Mr. Vergara-Perez Was Not Convicted of an Aggravated Felony.**

5

6   Mere possession of a controlled substance is not a felony under the Controlled Substances Act

7  because it is not an "illicit trafficking" offense [5].  *Lopez v. Gonzales*, 595 U.S. 47, 127 S.Ct. 625,

8  628-30 and 633 (2006)[6] (finding aiding and abetting the possession of cocaine did not constitute an

9  aggravated felony because mere possession is not a felony under the Controlled Substances Act).

10  The Supreme Court's decision in *Lopez, id*, was a case of statutory interpretation.  As such, its

11  holding did not change the law, and its analysis is equally applicable to the removal proceeding

12  which took place in 1998.  *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128

13  L. Ed.2d 274 (1994).

14

15   Additionally, the Board of Immigration Appeal's decisional law as it existed on July 31, 1998,

16  was consistent with the subsequent holding in *Lopez v. Gonzales*, *id*[7].  The available precedent

17  was *Matter of Davis*, 20 I. & N. Dec. 536 (BIA 1992).  "In *Matter of Davis*, the BIA held that a

18  state conviction of a drug offense must be punishable under one of the three Acts as a *federal*

19  felony, in order for the offense to qualify as an aggravated felony.  Therefore, an offense

20  punishable only as a *misdemeanor* under federal law would *not* trigger removal as an aggravated

21  felony drug trafficking offense.  Based on this holding, the BIA held in *Matter of LG*, [21 I. & N.

22

23      [5] See, note 1, *id*.

24      [6]  The Ninth Circuit confirmed in *United States v. Figueroa-Campos*, 494 F.3d 1211 (9th Cir.
25  July 24, 2007), that under *Lopez, id*, simple possession of drugs is not an aggravated felony for
   sentencing under U.S.S.G. § 2L1.2.

26      [7]  It was not until 2002, *In Matter of Yanez-Garcia*, 23 I. & N. Dec. 390, 2002 WL 993589
27  (2002) (announcing that BIA decisions would conform to the applicable Circuit law), that the BIA
   reversed itself and took the position that a state felony drug conviction for simple possession was an
28  aggravated felony under 8 U.S.C. § 1101(a)(43)(B).  However, at the time of the 1998, hearing, the
   BIA was clear that a state felony conviction for simple possession was not an aggravated felony
   under § 1101(a)(43)(B).

Dec. 89 (BIA 1995)] that a state *felony* simple possession offense that was a misdemeanor under the Controlled Substances Act ("CSA") was not an aggravated felony for immigration purposes." Norton Tooby and Joseph Justin Rollin, "Aggravated Felonies," 444 (2006 Ed.) (emphasis in the original).

As late as 1999, the BIA reaffirmed this principle in *Matter of KVD*, 22 I. & N. Dec. 1163 (BIA 1999). In *Matter of KVD*, the Fifth Circuit had held that a state felony drug conviction, which was not a federal felony, was to be considered an aggravated felony for the purposes of calculating the sentence in the criminal case of re-entry of an alien. In the *Matter of KVD*, the BIA distinguished the term "felony" in the sentencing context from the removal context and declined to find the Fifth Circuit's decision in *U.S. v. Hinajosa-Lopez*[8], controlling.

Given the state of the law as it stood in 1998, the Immigration Judge did not need to be clairvoyant, but only reasonably informed on what constituted an aggravated felony under the BIA's decisional law. The IJ's failure to recognize that simple possession of heroin is not an aggravated felony resulted in the IJ's failure to properly advise Mr. Vegara-Perez of his right to apply for discretionary relief from removal.

Mr. Vergara-Perez pled guilty to a simple possession of a controlled substance, for which he received less than a year in custody. [Exhibit M: A certified transcript of the guilty plea dated July 8, 1998.] He was a Lawful Permanent Resident for over seven years when he had his removal hearing. Under these circumstances the IJ should have informed him of his right to seek a cancellation of removal.

**C. The IJ Erred and Violated Mr. Vergara-Perez's Due Process Rights in Ordering Him Removable Without Advising Him of His Eligibility for Cancellation of Removal.**

---

[8]  130 F.3d 691 (5th Cir. 1997).

1

2

**1.     Section  INA § 240A(a)(3)[9] Relief**

3

4

5

6

7

8

9

10

11

On September 30, 1996, Congress passed the Illegal Immigration Reform and Immigrant

Responsibility Act ("IIRIRA").   Section 304(b) of IIRIRA abolished § 212(c) relief altogether, *see*

Pub.L. No. 104-208, § 304(b), 110 Stat. 3009-597 (1996) (repealing 8 U.S.C. § 1182(c).)

Congress instituted a new form of relief from removal in the form of Cancellation of Removal for

Certain Permanent Residents ("Cancellation").  INA § 240A(a)[10], 8 U.S.C. § 1229a(a).  A Lawful

Permanent Resident is eligible for a discretionary grant of Cancellation if the alien a) has been an

alien lawfully admitted for permanent residence for not less than 5 years, b) has resided in the

United States continuously for 7 years after having been admitted in any status, and c) has not been

convicted of any aggravated felony.

12

13

14

15

16

17

18

19

20

21

22

23

At the time of his removal proceeding on February 4, 1998, Mr. Vergara-Perez had resided

continuously in the United States for approximately thirteen years. [Exhibit G, at 2.]  For more

than nine of those years, he had been a lawful resident.  In addition, Mr. Vergara-Perez had been a

Lawful Permanent Resident (LPR) for over seven years, as he became a LPR on December 1,

1990.  "An alien may continue to accrue time toward the . . . seven-year requirement while the

alien appeals a deportation decision, even if that alien has conceded deportability at the

immigration hearing." *Jimenez-Marmolejo*, 104 F.3d 1083, 1085-86 (9th Cir. 1996) (citing

*Foroughi v. INS*, 60 F.3d 570, 572 (9th Cir.1995)).  By the time of his actual deportation in July

31, 1998, Mr. Vergara-Perez had established lawful residency of almost nine years and LPR status

of over seven years.  As such, there is no question that Mr. Vergara-Perez satisfied the seven-year

lawful continuous residency requirement of § 240A(a).

24

25

26

Mr. Vergara-Perez also satisfied § 240A(a)(3)'s requirement of serving less than one year

of imprisonment on his conviction.   Mr. Vergara-Perez had sustained only one conviction, the July

27

28

---

[9]  8 U.S.C. § 1229a(a)(3).

[10]  8 U.S.C. § 1229a(a).

8, 1998, conviction for simple possession of heroin.  The court imposed less than one year in custody. [Exhibits M and N: pg. 3.]

**2**    **The IJ Erred in Failing to Advise Mr. Vergara-Perez of His Eligibility for § 240A(a)(3) Relief**

A deportation/removal hearing is defective if the deportee is apparently eligible for relief from deportation/removal but the IJ misadvises him of his eligibility or fails to give an opportunity to apply for such relief.  *See United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003).  The IJ had a mandatory duty to advise Mr. Vergara-Perez of his apparent eligibility for relief from deportation.  *See* 8 C.F.R. § 240.49(a) (1999); 8 C.F.R. 242.17 (1994) (repealed and recodified in amended form in 8 C.F.R. § 240.49(a) (1999)).  "The requirement that the Immigration Judge inform an alien of his or her ability to apply for relief from removal is 'mandatory,' and '[f]ailure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying deportation proceeding.'" *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049-50 (9th Cir. 2004) (as amended) (quoting *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001)  (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000))).  *See also United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993) (concluding that if a waiver is not considered and intelligent, the alien "has been deprived of judicial review in violation of due process.")

Here, the IJ failed to advise Mr. Vergara-Perez that he was eligible for relief from removal pursuant to § 240A(a)(3).  Thus, the IJ's failure to advise Mr. Vergara-Perez of his right to relief from removal pursuant to § 240A(a)(3) failed to give him an opportunity to present an application for such relief.  These failures constituted a violation of his due process right.

**D.**    **Mr. Vergara-Perez Exhausted His Administrative Remedies**

13

1  The Ninth Circuit has consistently interpreted § 1326(d)(1) in light of the Supreme Court's

2  decision in *Mendoza-Lopez*. Under *Mendoza-Lopez*, a failure to appeal does not matter in a case

3  like this. That is because a deportee's waiver of appeal must be both "considered and intelligent."

4  *Mendoza-Lopez*, 481 U.S. at 840. If the decision not to appeal, is not "considered and intelligent,"

5  then the waiver violates the deportee's due process rights and is invalid. *Id.*

6

7  A deportee cannot waive his right to appeal in a considered and intelligent way if he does not

8  know that he is eligible for relief from deportation. *See United States v. Arrieta*, 224 F.3d 1076,

9  1079 (9th Cir. 2000) (defendant's waiver of appeal of deportation order was invalid; immigration

10  judge never told him of eligibility for relief from deportation under 8 U.S.C. § 212(h)). For this

11  reason, the Ninth Circuit has repeatedly found a waiver of appellate rights invalid where an

12  immigration judge failed to tell a deportee of a possible ground for relief. *See, e.g.*, *Ubaldo-*

13  *Figueroa*, *supra*; *Arrieta, id*; *Jimenez-Marmolejo, id*. Indeed, the Court has explicitly stated that a

14  deportee's waiver is not considered and intelligent "when the record contains an inference that [he]

15  is eligible for relief from deportation, but the Immigration Judge fails to advise [him] of this

16  possibility and give him the opportunity to develop the issue." *United States v. Muro-Inclan*, 249

17  F.3d 1180, 1182 (9th Cir. 2001); *see also Leon-Paz*, 340 F.3d at 1005 (same) (quoting *Muro-*

18  *Inclan, supra*); *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) (same)

19  (quoting *Muro-Inclan, supra*). "The exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar

20  collateral review of a deportation proceeding when the waiver of right to an administrative appeal

21  did not comport with due process." *Muro-Inclan*, 249 F.3d at 1183; *see also Ubaldo-Figueroa*,

22  347 F.3d at 726 (defendant collaterally attacking deportation is "exempted from the exhaustion

23  requirement . . . because the IJ did not inform him that he was eligible for relief from

24  deportation"); *United States v. Estrada-Torres*, 179 F.3d 776, 780-81 (9th Cir. 1999) (per curiam)

25  (explicitly acknowledging that Due Process Clause trumps § 1326(d)(1) exhaustion requirement)

26  (citing *Mendoza-Lopez*, 481 U.S. at 840, 107 S. Ct. at 2156), *overruled on other grounds*, *United*

27  *States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) *(en banc)*; *United States v. Corrales-*

28  *Beltran*, 192 F.3d 1311, 1316 (9th Cir. 1999) (deportee who was charged after effective date of §

14

1    1326(d) claimed defective appellate waiver; circuit court ignored exhaustion requirement, applied

2    *Mendoza-Lopez* analysis); *United States v. Esparza-Ponce*, 193 F.3d 1133, 1135 & n. 3 (9th Cir.

3    1999) (same); *Pallares-Galan*, 359 F.3d at 1096 (same).

4

5        Like the defendants in the cases cited above, Mr. Vergara-Perez made an unconsidered and

6    uninformed appellate waiver.   The record before the IJ contained facts from which the IJ should

7    have inferred that Mr. Vergara-Perez was eligible for relief from removal, but the Immigration

8    Judge failed to advise him of this possibility and failed to give him the opportunity to develop the

9    issue. The IJ had before him, Mr. Vergara-Perez, an alien whom the IJ knew was a Lawful

10    Permanent Resident since December 1990, with at least seven years of LPR status. [Exhibit R:

11    Transcript of July 31, 1998, Removal Proceeding.]   The IJ also knew (and if he did not know,

12    should have inquired) that the Denver Superior Court sentence imposed less than one year in

13    custody on Mr. Vergara-Perez on his drug conviction.   The IJ also knew that Mr. Vergara-Perez

14    wished to legally remain in the United States by his question of whether he could remain in the

15    United States if he married his fiancee[11]. [Exhibit R: pg. 7.]   However, the IJ never told him that

16    he was eligible for § 240A(a)(3) relief.  Mr. Vergara-Perez's did not seek § 240A(a)(3) relief

17    because he was not made aware of said remedy. [Exhibit D: Declaration of Osiel Vergara-Perez: ¶

18    10.] Thus, Mr. Vergara-Perez waived his administrative appellate right with respect to §

19    240A(a)(3) without ever having received the critical advice that he needed to make his waiver

20    considered and intelligent.  Put another way, because the IJ did not tell him that he was eligible for

21    § 240A(a)(3) relief, Mr. Vergara-Perez could not make a considered and intelligent decision about

22    whether to apply for that relief, and he could not make a considered and intelligent decision about

23    whether to appeal the IJ's removal order.  *See e.g., Pallares-Galan*, *supra*; *Arrieta*, *supra*; *Jimenez-*

24    *Marmolejo*, *supra*.  For this reason, under *Mendoza-Lopez*, Mr. Vergara-Perez is not required to

25    have exhausted his administrative remedies.

26

27        [11]  "Can I come back to the U.S. if I get married because I have my fiancée here . . . ." *Id*.
     Immigration Judge answered:  "No, Sir, this is a Felony drug conviction and there is
28    no relief available to you and there is no possibility for you to come back as long as
     that is on your record."  *Id*.    [Exhibit R, pg. 7.]

15

**E. Mr. Vergara-Perez Was Deprived of a Meaningful Opportunity for Judicial Review**

A deportee has been deprived of a meaningful opportunity for judicial review if he entered a defective waiver of his right to administratively appeal his deportation order. *See Pallares-Galan*, 359 F.3d at 1096 (finding defendant's waiver of his right to appeal was not "considered and intelligent" and "deprived [him] of his right to judicial review" under § 1326(d)(2)). "[A]n alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Arrieta*, 224 F.3d at 1079 (citation omitted). *See also United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999) (same).

The government -- not the alien -- bears the full burden of showing that a waiver was considered and intelligent. *See United States v. Lopez-Vasquez*, 1 F.3d 751, 754 (9th Cir. 1993). In fact, "it [is] incumbent upon the [government] to prove an intentional relinquishment of a known right or privilege" to judicial review by clear and convincing evidence. *Id.* (quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977)). Furthermore, a court, in determining whether the government has met this burden, must indulge every reasonable presumption against the waiver. *Lopez-Vasquez*, 1 F.3d at 754 (quoting *Barker v. Wingo*, 407 U.S. 514, 525 (1972)). If the waiver is not considered and intelligent, the alien "has been deprived of judicial review in violation of due process." *Lopez-Vasquez*, 1 F.3d at 754.

Here, as described above, Mr. Vergara-Perez was not told of his eligibility for § 240A(a)(3) relief. As a result, he entered a defective waiver of his right to administratively appeal his removal order. The unknowing and unintelligent waiver also deprived him of a meaningful opportunity for judicial review.

**F.      Mr. Vergara-Perez Suffered Prejudice as a Result of the Defect in his Removal Hearing Because He Had Plausible' Ground for Relief from Deportation.**

1  A defendant who collaterally attacks his underlying deportation must show that the error at

2  his deportation hearing prejudiced him.  Where the error is a failure to inform him that he was

3  eligible for relief from deportation, he shows prejudice by demonstrating that he had a *plausible*

4  ground for relief from deportation – that is, that he had a plausible claim to the relief of which he

5  was not told.  A defendant need not prove that he actually would have been granted relief; instead,

6  he "must only show that he had a 'plausible' ground for relief from deportation." *Ubaldo-*

7  *Figueroa*, 364 F.3d at 1050 (citing *Arrieta*, 224 F.3d at 1079).

8  The defense recognizes, as it must, that § 240A(a)(3) relief is not automatic.  In other

9  words, it is not enough just to be eligible.  The deportee must also have been in a position to

10  persuade any IJ to exercise discretion in his favor by waiving deportation.  *See*, *e.g.*, *Matter of*

11  *Edwards*, 20 I&N Dec. 191 (BIA 1990) (describing factors to be weighed in exercise of

12  immigration judge's discretion).  *See also United States v. Jimenez-Marmolejo*, 104 F.3d at 1086

13  (explaining that the standard is whether the defendant/respondent had a "plausible ground" for

14  relief).  What Mr. Vergara-Perez must show in order to prove prejudice regarding his motion to

15  dismiss the Indictment, is that he *might* be able to show sufficient equities if he were in front of an

16  immigration judge, that is *plausible grounds* for relief.  *United States v. Ahumada-Aguilar*, 295

17  F.3d 943, 951 (9th Cir. 2002) (citing *Jimenez-Marmolejo*, 104 F.3d at 1086).  It is not necessary to

18  prove that this Court would have granted relief but only that Mr. Vergara-Perez *had* a chance of

19  convincing any immigration judge to grant relief.  That is, would it be objectively reasonable for

20  any immigration judge to grant relief from removal?[12]

21

22  In determining whether or not to grant discretionary relief, the BIA has enumerated several

23  factors to consider.  Those considerations that favor relief include: residence of long duration in

24  this country (particularly when residence began at a young age); family ties within the United

25

---

26  [12]  The standard can also be understood as a deference standard.  That is, if an immigration
27  judge granted relief from removal, would such an order have been an abuse of discretion?  If not an
   abuse of discretion, then the defendant has proven that he had plausible grounds for relief, regardless
   of whether some other IJ would have denied relief. *See, Tawadrus v. Ashcroft, 364 F. 3d 1069 (9th*
28  *Cir. 2004.)* (Findings of fact are "conclusive unless any reasonable adjudicator would be compelled
   to conclude the contrary.")

States;  hardship to the petitioner or petitioner's family if relief is not granted; service in the United

States armed forces;  a history of employment; the existence of business or property ties; evidence

of value and service to the community; proof of rehabilitation if a criminal record exists; and  other

evidence attesting to good character.  *Pablo v. INS*, 72 F.3d 110, 113 (9th Cir. 1995).

Given the opportunity, Mr. Vergara-Perez would have presented strong evidence with

respect to many of the factors mentioned above.

First, at the time of his removal hearing, Mr. Vergara-Perez had lawfully lived in this

country for over thirteen years. [*See* Exhibit U, Declaration of Adalberta Perez-Berrum, ¶ 20:

Exhibit D, ¶ 6[13].]  Both the Ninth Circuit and the BIA have ruled that a deportee's long residence

weighs strongly in favor of relief.  *See Pablo*, 72 F.3d at 113 (listing "residence of long duration"

as a factor that weighs towards the granting of discretionary relief).  *See also Jimenez-Marmolejo*,

104 F.3d at 1086 (residence of twenty years considered a positive factor); *Matter of Arreguin*, 21

I&N Dec. 38 (BIA 1995) (twenty years of residence, since deportee's arrival at age of seventeen

considered a positive factor).

Mr. Vergara-Perez has also lived in this country since he was fifteen years old. [ *See*

Exhibit  H, ¶¶ 7 and 8 and  Exhibit I, ¶¶'s 9 and 10.]   Residence in the United States since early

childhood is another factor that weighs in favor of relief.  *See Jimenez-Marmolejo*, 104 F.3d at

1086 (deportee lived in United States from the age of three).  Although Mr. Vergara-Perez was not

born in the United States, he has been here since he was a minor.

Second, Mr. Vergara-Perez has substantial family ties to the United States.  The people

most important to him ( *i.e.*, his siblings, aunts, uncles, cousins, and mother) live in the United

States. [*See* Declaration of Osiel Vergara-Perez, ¶¶ 7-9.]  Indeed, the Ninth Circuit has reversed the

---

[13]  See also the declarations of Maria Elvia Flores [Exhibit H, ¶¶ 7 and 8]; Maria Adenis
Vergara [Exhibit V]; Urbana Molina-Perez [Exhibit J]; Zoila Vergara [Exhibit W, ¶ 5]; And Areli
Vergara-Perez [Exhibit I, ¶¶ 9 and 10.]

1   denial of § 212(c) relief for a deportee who had been convicted of armed robbery because, among

2   other factors, the deportee's whole family lived in the United States. *Giorgiu v. INS*, 90 F.3d 374,

3   376-77 (9th Cir. 1996) (citations omitted).  Similarly, the Court has reversed the denial of § 212(c)

4   relief for a deportee convicted of money laundering and drug offenses where the deportee lived

5   with a domestic partner and maintained close relationships with his partner's family. *Kahn v. INS*,

6   36 F.3d 1412, 1414 (9th Cir. 1994).   The Court has also held that a defendant convicted of

7   attempted first-degree burglary of a dwelling showed a plausible ground for relief from deportation

8   by, among other factors, describing his substantial family ties, which were a "weighty factor" in his

9   favor. *Ubaldo-Figueroa*, 347 F.3d at 722, 735 (citation omitted).  Mr. Vergara-Perez's family ties

10  to the United States are substantial.

11

12      Third, Mr. Vergara-Perez's family would suffer a tremendous financial and emotional

13  hardship if he were deported. *See generally*, Declarations of Maria Elvia Flores [Exhibit H, ¶ 9 ];

14  Maria Adenis Vergara [Exhibit V: ¶¶ 3 - 9]; Urbana Molina-Perez [Exhibit J: ¶ 5]; Zoila Vergara

15  [Exhibit W, ¶¶'s 7 - 10]; And Areli Vergara-Perez [Exhibit I, ¶¶ 13-14.]  The Vergara-Perez's are a

16  very close family, and Mr. Vergara-Perez's financial and emotional support is vital to the family's

17  well being. *See id.  See also Arrieta*, 224 F.3d at 1082 (the Ninth Circuit held that the existence of

18  family ties in the United States is the most important factor in determining hardship) (citations

19  omitted). Additionally, the family has expressed that the hardship they would suffer as a result of

20  the family's separation is far more substantial than even the financial hardship. *See generally*,

21  Declarations of Maria Elvia Flores [Exhibit H, ¶ 9 ]; Maria Adenis Vergara [Exhibit V: ¶¶ 3 - 9];

22  Urbana Molina-Perez [Exhibit J: ¶ 5]; Zoila Vergara [Exhibit W, ¶¶'s 7 - 10]; And Areli Vergara-

23  Perez [Exhibit I, ¶¶ 13-14. *See also Arrieta*, 224 F.3d at 1082 ("preservation of family unity" is a

24  "central factor" in the hardship inquiry).

25

26      Fourth, Mr. Vergara-Perez has been steadily employed during residency in the United

27  States. [*See* Exhibit F: Social Security Administration Earnings Records.]   Additionally, he

28

registered for the selective service [Exhibit F] which demonstrates his willingness to serve the United States in time of need.

Fifth, Mr. Vergara-Perez is a valuable asset to his family and his in particular his parents who live in the United States with his siblings. He had while working in the United States provided financial support to his parents. [Exhibit U: Declaration of Adalberta Perez-Berrum, ¶¶'s 5 and 6[14].]

Sixth, Mr. Vergara-Perez did not have an extensive criminal record and at the time of his removal hearing he had only one state felony conviction, not an aggravated felony.

It is true that Mr. Vergara-Perez had committed a crime, but § 240A(a)(3) by definition assumes that a deportee had committed a crime -- even more, the statute assumed that the deportee may have committed drug offense. The whole purpose of the section was to offer relief to legal permanent residents who had committed such crimes. At the time of Mr. Vergara-Perez's guilty plea in 1998, Congress had not excluded all persons convicted of simple drug possession. Thus, it cannot be argued that Mr. Vergara-Perez's conviction would have caused the IJ to deny relief. *See United States v. Aguirre-Tello*, 324 F.3d 1181, 1195-96 (10th Cir. 2003) (noting in case of defendant with conviction for attempted murder that aggravated felony could not be an automatic bar from discretionary relief when Congress chose not to make it so), *reversed on other grounds,* 353 F.3d 1199 (10th Cir. 2004) (*en banc*).

César R. Ternieden, an immigration law expert, opines that Mr. Vergara-Perez had very strong positive factors in favor of § 240A(a)(3) relief, finding his equities to be more than enough to obtain relief from deportation. [*See* Exhibit G: Declaration of César R. Ternieden, Esq., ¶¶ 31-

---

[14]  *See also generally*, Declarations of Maria Elvia Flores [Exhibit H, ¶ 9 ]; Maria Adenis Vergara [Exhibit V: ¶¶ 3 - 9]; Urbana Molina-Perez [Exhibit J: ¶ 5]; Zoila Vergara [Exhibit W, ¶¶'s 7 - 10]; And Areli Vergara-Perez [Exhibit I, ¶¶ 13-14.]

1   38.]  He further opined that Mr. Vergara-Perez had a substantial probability of receiving such

2   relief.  *See*  Exhibit G*:* ¶ 38.

3

4       Section 240A(a)(3) was created for people who had committed crimes and who,

5   nevertheless, deserved to remain in the United States.  The question for this Court to decide is

6   whether relief from deportation was "plausible" in Mr. Vergara-Perez's case.  In light of the

7   substantial equities in his favor, Mr. Vergara-Perez respectfully submits that this question should

8   unequivocally be answered in the affirmative.

9

10      It appears from the record before this Court that an IJ *could have* concluded that Mr.

11  Vergara-Perez's potential claim for relief from deportation would be "plausible," therefore, Mr.

12  Vergara-Perez "is entitled to the dismissal of his indictment."  *United States v. Pallares-Galan*,

13  359 F.3d at 1103.

14

15                                      **IV.**

16  _____ **CONCLUSION** _____

17      For the foregoing reasons, the defense respectfully requests that the Court dismiss the

18  indictment against Mr. Vergara-Perez.

19

20                          Respectfully submitted,

21                          BARRY J. PORTMAN
                            Federal Public Defender

22

23  DATED:  May 15, 2008                  By_____/S/_____

24                                          Manuel U. Araujo,
                                            Assistant Federal Public Defender

25

26

27

28

                                        21