# EXHIBIT D

## DECLARATION OF OSIEL VERGARA-PEREZ

I, Osiel Vergara-Perez, declare as follows:

1. I am the defendants in the case of <u>United States v. Osiel Vergara-Perez</u>, CR 07-00595-JF.

2. I was born on September 19, 1969, in Mexico, to Adalberta Berrum-Perez and Alvoro Vergara. Both of my parents are over seventy years of age. I resided in Mexico with my parents until the age of fourteen. In 1984, I came to the United States. I came by myself and crossed into the United States at El Rio, Texas. At that time I had four brothers who were living in Chicago.

3. I applied for and was first admitted to Temporary Resident Status on or about February 23, 1989, through the Special Agricultural Worker program ("SAW"). My immigration status was ultimately adjusted to that of a Lawful Permanent Resident (commonly knows as a "green-card holder") on December 1, 1990 through SAW in Detroit, Michigan.

4. As soon as I entered the United States in 1984, I started working as an agricultural worker in Waco, Texas. I briefly went to Chicago with my older brothers, and then moved to the state of Florida. While in Florida I worked in agriculture as a laborer, and I lived with my cousin, Oscar Medrano in the city of Pearson, Florida. Mr. Medrano and I worked as farm laborers for a man whom I knew by the name of James. I lived in Florida for approximately five or six years and worked during those years as a farm laborer.

5. In approximately 1989, I moved to Gainesville, Georgia where I lived and worked in farm work for a few months with other cousins. In about 1990, I moved to Kalamazoo, Michigan where I worked as a cook at a Greek restaurant named "Olympia." During that

my time in Kalamazoo, I lived in a home owned by the restaurant's owner Angelo Patrolas. Thereafter, I moved to Lexington, Nebraska, where I work at the IBP Slaughterhouse for a few months in 1995 and 1996. In late 1996, I went to Seattle, Washington where I worked for about six months for Trident Fish Cannery on their fishing boats out of Anchorage, Alaska. After finishing work with Trident Fish Cannery, I traveled back to the mainland. While traveling through Denver, Colorado I was arrested and charged with possessing a drug.

6. Since the age of 15 years, with the exception of the brief time after my deportation in 1998, I have lived in the United States continuously. During the first 14 years of my life in Mexico, I received some formal education, but I left school when I was about twelve years old because our family was poor and I needed to support myself and help my parents. Since coming to the United States, I have learned to speak and read some English.

7. For a number of reasons, living in Mexico for me is an extreme hardship. First, for a number of years, including the years before I was removed from the United States in July 1998, both my parents and a number of my siblings have lived in the United States. I am close to those siblings and would find it impossible to see or visit them if I was permanently removed from the United States. Secondly, because I came to the United States at a young age, I am not socially and culturally assimilated into the Mexican social norms, or even manner of speaking. While I do speak Spanish relatively well, my manners and way of speaking Spanish is not the same as persons who have lived in Mexico their entire life. The problem with this is that it signals me out as an outsider.

Case 5:07-cr-00595-JF   Document 31-3   Filed 05/15/2008   Page 4 of 5

During the time of my removal (and even now) I had limited contacts in Mexico who could assist me to find a job, or a place to live. I have no social net in Mexico where I could apply for assistance.

8. While I do have a limited number of siblings still living in Mexico, they are substantially older than I am, and I have a minimal relationship with them. In other words, I cannot expect any assistance from them, either financially or morally. Proof of that fact, is that at the age of fifteen, I came to the United States on my own and without any assistance from my siblings. It was my cousins in Florida whom were willing to help me find work. On my return to Mexico in 1998, I realized that I had no one to turn to for assistance and I felt like an outsider.

9. Over the years, I have become close to my family members who live in the United States. In particular, I have become close to my sisters Urbana and Maria Elvia, who live in Chicago, Illinois, my sisters Zoila, and Maria Adenis, who live in Texas, and brother Arili who also lives in Texas. Prior to my removal, I had constant contact with them and my parents. I provided financial assistance to my parents, and fulfilled, as best I could, my family responsibility.

10. During the July 31, 1998, hearing the Immigration Judge told me that I had no right to relief from removal from the United States because I had been convicted of a felony drug felony. I initially asked for the right to appeal, but after thinking about it, I realized that I had nothing to appeal since the judge had told me that I had no right to seek a remedy to my removal from the United States. In other words, because of what the Immigration Judge told me, I came to believe that my appeal had no merit, so I agreed to give up my

right to appeal a few days later. Had I been informed that I had a basis to stay legally in the United States, I would have requested during the July 31, 1998, hearing my right to prove that I should be allowed to remain in the United States and if denied my request for relief, I would have appealed to the Board of Immigration Appeal.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Signed this 14th day of May 2008, in the City of San Jose, the States of California.

_Osiel Vergara Perez_
Osiel Vergara-Perez