# EXHIBIT F

Selective Service System: Verification Receipt                              Page 1 of 1



## nline Verification

——————— KEY INFORMATION ———————

### Selective Service Record Search Results

**Search Criteria**
**Last Name:** *Vergara Perez*
**Social Security Number:** *** - ** - 9781
**Date of Birth:** 09/19/1969

**Matched Record**

| Selective Service Number: |
| --- |
| 69-1735388-7 |
| |
| Date of Registration |
| 9/28/1988 |

To obtain written proof of Selective Service registration CLICK HERE and follow the
instructions on our "Registration Information" page.

New Search ?

**FAQs**



Last Updated: 8/14/2007

©2007 Selective Service System

https://www.sss.gov/RegVer/wfVerification.aspx                              5/1/2008

# EXHIBIT  G

**Affidavit of César R. Ternieden**

1.    My name is César R. Ternieden.  I am an attorney licensed to practice in the State of Arizona in good standing.  State Bar No. 020704.  I was admitted to the State Bar of Arizona on November 30, 2000.

2.    I am currently a solo practitioner, doing business as Law Office of César R. Ternieden at 700 Market St., Ste. 300, San Francisco, CA  94103.

3.    Since admitted to the bar, I have limited my practice to immigration law, with special emphasis on the immigration consequences of criminal convictions.

4.    I was asked by Mr. Manuel Araujo, Esq., to review Mr. Osiel Vergara-Perez's Immigration File (including tape of immigration hearing dated July 31, 1998), (2) Transcripts in Colorado case, Colorado Online Documents, and Copy of Colorado State Complaint.  This affidavit was entered into with no particular result in mind.

5.    Mr. Vergara was born on September 19, 1969, in Quimichatenco, Mexico.  Mr. Vergara first entered the United States on or before January 1985.  Mr. Vergara was first admitted as a Temporary Resident Status on or about February 23, 1989, through the Special Agricultural Worker program ("SAW").  Mr. Vergara's immigration status was ultimately adjusted to that of a Lawful Permanent Resident (commonly knows as a "green-card holder") on December 1, 1990 through SAW in Detroit, Michigan.

6.    On or about June 9, 1998, Mr. Vergara was charged in connection with two counts in the Second Judicial District Court at Denver, Colorado:  Count I:

1

Distribution of a Controlled Substance, to wit, Heroin, in violation of C.R.S. § 18-18-405(1)(a) and (2)(a)(I) (a class 3 Felony); and Count II: Possession of a Controlled Substance, to wit, Heroin, in violation of C.R.S. § 18-18-405(1)(a) and (2)(a)(I) (a class 3 Felony).

7.  On July 8, 1998, Mr. Vergara pled guilty to Count II *only*, that is, possession of a Controlled Substance, and ordered 5 years of probation. Count I for Distribution of a Controlled Substance was dismissed. Although Mr. Vergara was informed by Hon. Lynn Martinelli that his criminal conviction "will be a felony drug conviction" and that he would be subject to deportation and that "[t]he condition of [his] probation would be that [he] cooperate in the deportation proceeding," Mr. Vergara was not informed of any further substantive right in his criminal proceedings.

8.  On July 14, 1998, the then Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") effectively alleging that Mr. Vergara had been convicted in the District Court, at Denver County, Colorado, for the offense of Possession of a Controlled Substance, to wit: Heroin; and was subject to removal pursuant to Section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i), for having been convicted of a violation of a law relating to a controlled substance and pursuant to Section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). Notably, the NTA did not allege that Mr. Vergara's

2

offense was neither a felony, nor did it state the Colorado statutory provision under which he had been convicted.

9.    Upon the filing of the NTA with the Immigration Court at Aurora, Colorado, removal proceedings began against Mr. Vergara.

10.    Mr. Vergara appeared before the Immigration Judge on July 31, 1998, at which time the Immigration Judge conducted a group hearing with several other aliens at the same time.

11.    The Immigration Judge specifically informed all those present: "Those with drug conviction are not eligible for voluntary departure. And even though you are permanent residents, there is no waiver available to allow you to keep your green card. . . . So if any one wants to apply for voluntary departure you may raise your hand, or if you have a question about your immigration status or about getting a visa through a family member you may raise your hand." *See* Recorded Tape of Hearing dated July 31, 1998.

12.    Mr. Vergara specifically asked the Immigration Judge: "Can I come back to the U.S. if I get married because I have my fiancée here . . . ." *Id.* To which the Immigration Judge answered: "No, Sir, this is a Felony drug conviction and there is no relief available to you and there is no possibility for you to come back as long as that is on your record." *Id.*

13.    This, however, was in error and clear violation of the law as it stands today and as it stood in 1998.

3

14.  Generally, in 1996 Congress instituted a new form of relief from removal in the form of Cancellation of Removal for Certain Permanent Residents ("Cancellation"). INA § 240A(a), 8 U.S.C. § 1229a(a). A Lawful Permanent Resident is eligible for a discretionary grant of Cancellation if the alien

> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

15.  In 1998, Mr. Vergara had already been a lawfully admitted for permanent residence for over 7 years. Nothing in his file indicates that he had not continuously resided in the United States for 7 years. In fact, it appears that Mr. Vergara had been in lawful status for over approximately 9 years since obtaining Temporary Resident Status.

16.  Mr. Vergara had been living in the U.S. continuously since approximately January 1985.

17.  The question presented to the Immigration Judge was if he had been convicted of an aggravated felony. If so, Mr. Vergara was not eligible for cancellation of removal and his deportation was proper. *See* INA § 240A(a)(3), 8 U.S.C. § 1229a(a)(3). *See also U.S. v. Reveles-Espinoza*, ___ F.3d ___ (9th Cir., April 15, 2008) (finding that because the alien's drug conviction was an aggravated

4

felony, he was not eligible for Cancellation and his prior removal order was

proper).

18.    " 'Aggravated felony' means . . . illicit trafficking in a controlled substance(as

defined in section 802 of Title 21), including a drug trafficking crime (as

defined in section 924(c) of Title 18)." INA § 101(a)(43), 8 U.S.C. §

1101(a)(43). "[T]he term 'drug trafficking crime' means any felony

punishable under the Controlled Substances Act . . . ." 18 U.S.C. § 924(c)(2).

19.    Thus, the difficulty in such cases has been to determine the definition of a

"felony."

20.    On July 31, 1998, the precedent available was *Matter of Davis*, 20 I. & N. Dec.

536 (BIA 1992). "In *Matter of Davis*, the BIA held that a state conviction of a

drug offense must be punishable under one of the three Acts as a *federal*

felony, in order for the offense to qualify as an aggravated felony.  Therefore,

an offense punishable only as a *misdemeanor* under federal law would *not*

trigger removal as an aggravated felony drug trafficking offense.  Based on this

holding, the BIA held in *Matter of LG*, [21 I. & N. Dec. 89 (BIA 1995)] that a

state felony simple possession offense that was a misdemeanor under the

Controlled Substances Act ("CSA") was not an aggravated felony for

immigration purposes." Norton Tooby and Joseph Justin Rollin, "Aggravated

Felonies," 444 (2006 Ed.) (emphasis in the original).

5

21.    Thus, since 1992, the controlling rule was that a conviction had to be a felony
       under federal law; whereas, a state felony did not make a drug conviction an
       "aggravated felony." *Matter of Davis*, 20 I. & N. Dec. 536.

22.    More specifically, a simple possession of a controlled substance was not an
       aggravated felony because it is not a federal felony, irrespective of whether the
       State of Colorado designated it a felony for example. *Matter of LG*, 21 I. & N.
       Dec. 89 (BIA 1995).

23.    As late as 1999, the BIA reaffirmed this principle in *Matter of KVD*, 22 I. & N.
       Dec. 1163 (BIA 1999).  In *Matter of KVD*, the Fifth Circuit had held that a
       state felony drug conviction, which was not a federal felony, was to be
       considered an aggravated felony for the purposes of calculating the sentence in
       the case of re-entry of an alien.  In that case, the BIA distinguished the term
       "felony" in the sentencing context from the removal context and declined to
       find that the Fifth Circuit decision in *U.S. v. Hinajosa-Lopez*, 130 F.3d 691 (5th
       Cir. 1997) was controlling.

24.    Therefore, on July 31, 1998, Mr. Vergara's conviction for possession of a
       controlled substance was not a federal felony, even if the State of Colorado
       designated it a class 3 Felony.  Since his conviction was not an aggravated
       felony, Mr. Vergara was clearly eligible for Cancellation under INA §
       240A(a)(3), 8 U.S.C. § 1229a(a)(3).

25.    Since 1998, the law has undergone a number of changes but it has come back
       to the original principle in *Matter of Davis*:  Most recently the U.S. Supreme

Court held in *Lopez v. Gonzales* that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. ____,127 S.Ct. 625, 633 (2006).

26.   Therefore, under the state of the law in July 1998 and now, Mr. Vergara's conviction for possession of a controlled substance was not a federal felony, even if the State of Colorado designated it a class 3 Felony. Since his conviction was not an aggravated felony, Mr. Vergara was eligible for Cancellation under INA § 240A(a)(3), 8 U.S.C. § 1229a(a)(3).

27.   Once ordered removed, Mr. Vergara was informed of his right to appeal and he reserved that right. However, on August 4, 1998, Mr. Vergara, through Deportation Officer Homero Mendoza, waived his right to appeal.

28.   Mr. Vergara's "waiver of his right to appeal his removal order was not sufficiently 'considered and intelligent' because the IJ presiding over the removal proceeding failed to inform him of his statutory eligibility for relief from removal. *See United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (defendant's waiver of appeal of deportation order was invalid; immigration judge never told alien of his eligibility for relief from deportation under 8 U.S.C. § 212(h)). *See also Untied States v. Muro-Inclan,* 249 F.3d 1180, 1182-83 (9th Cir. 2001) (requirement that IJ inform alien of eligibility for relief is "mandatory;" "failure to so inform the alien [of his or her eligibility for relief from removal] is a denial of due process that invalidates the underlying

7

deportation proceeding."); *Moran-Enriquez v. INS,* 884 F.2d 420, 422-23 (9[th]
Cir. 1989) ("[T]he IJ must advise the alien of [his eligibility for relief] and give
him the opportunity to develop the issue."); *United States v. Arce-Hernandez,*
163 F.3d 559, 563 (9th Cir. 1998) (IJ erred by failing to advise the alien of right
to apply for relief from deportation; that defect was a due process violation that
deprived the alien of judicial review; no meaningful opportunity to appeal the
fact that he was not advised of that right).

29.    On July 31, 1998, Mr. Vergara was a long term Lawful Permanent Resident in
the United States.

30.    Mr. Vergara has relevant family ties in the United States, from which a sister
Maria Elvia Flores, is a Untied States citizen; a brother, Areli Vergara, is a
Lawful Permanent Resident; and a sister, Urbana Molina, is a Lawful
Permanent Resident.

31.    By July 31, 1998, Mr. Vergara had been living in the United States for over 13
years since at least approximately January 1985; more than 9 of those years in
lawful status as a Temporary Resident alien, and over 7 of those years in
Lawful Permanent Resident status.

32.    Mr. Vergara registered for Selective Service on September 28, 1988, even
before obtaining lawful status in the United States.

33.    It appears from the Social Security Administration Earnings Records that by
July 31, 1998, Mr. Vergara had relatively continuous lawful gainful
employment during his residency in the United States.

8

34.   The 1998 record of proceedings contained no reference to a criminal

conviction other than the single conviction that led to his arrest and removal

proceedings in July 1998.

35.   Under *Matter of C-V-T-*, 22 I. & N. Dec. 7 (BIA 1998) (citations omitted), to

establish discretionary eligibility for Cancellation, the Immigration Court

should consider:

a.  Positive Factors:
    i.     Family ties within the U.S.:
    ii.    Residency of long duration in this country;
    iii.   Evidence of hardship to the respondent and family if
           deportation occurs;
    iv.    Service in Armed Forces;
    v.     History of employment;
    vi.    Existence of property or business ties;
    vii.   Existence of value and service to the community;
    viii.  Proof of genuine rehabilitation if a criminal record exists;
    ix.    Evidence attesting to a respondent's good character.

b.  Negative Factors:
    i.     Nature and underlying circumstances of exclusion grounds;
    ii.    Additional significant violations of INA;
    iii.   Existence of criminal record;
    iv.    Other evidence of bad character or undesirability

36.   The Immigration Court may also consider evidence of general conditions in a

country in determining hardship. *Matter of D-*, 20 I. & N. Dec. 915 (BIA

1994).

37.   Based on Mr. Vergara's prior lawful status, continuous residence, family ties to

the United States, selective service registration, work history, and single

criminal conviction, and based on my experience in litigating such claims with

clients both in custody and outside custody of I.C.E., it is my opinion that Mr.

9

Vergara was well beyond a plausibility of obtaining relief from removal in July 31, 1998, and well placed within a strong probability of success in obtaining relief from removal in the form of Cancellation before an Immigration Judge while in custody in Aurora, Colorado.

38.    Had the Immigration Judge properly analyzed his simple possession of a controlled substance as not classified as an aggravated felony as dictated by then and now precedent controlling case law, and had the Immigration Judge offered Mr. Vergara an opportunity to seek Cancellation, Mr. Vergara had a strong probability of success in obtaining relief from removal in the form of Cancellation.

I certify that the above is true and correct to the best of my information, belief, and knowledge.

5/8/08
Date

César R. Ternieden

10

### *Law Office of César R. Ternieden*
Immigration Law Attorney
703 Market Street, Suite 300, San Francisco, CA 94103

César R. Ternieden, Esq.*          Telephone: (415) 618-0669          Facsimile: (415) 618-0659

*Admitted to the State Bar of Arizona, with practice limited to Immigration Law.

## *Curriculum Vitae*

## *Experience*

**May 2005 – Present    Law Office of César R. Ternieden - Solo practitioner**
Immigration and human rights law firm practice, emphasis on immigration defense with criminal issues, political asylum, withholding of removal, protection under Convention Against Torture. Includes representation before the Immigration Court, appeals to the Board of Immigration Appeals, and before the Court of Appeals for the Ninth Circuit.

**May 2004 - May 2005    Law Office of Robert L. Lewis - Senior Associate Attorney**
Same as above, and with approximately 30 cases before the Court of Appeals for the Ninth Circuit.

**Dec. 2000 - May 2004    Pelino & Ternieden Law Office – General Partner**
General partner at immigration and human rights law firm at Florence, Arizona.
Emphasis on detention issues and representation of all issues in detention. Practice before Immigration Court, Board of Immigration Appeals, Court of Appeals for the Ninth Circuit, Federal District Court. Also represented client in *Mandamus* action and five individuals in *Habeas Corpus* proceedings before the Federal District Court at Phoenix, Arizona;

Admitted to State Bar of Arizona (2000), U.S. District Court of Arizona (2001), and U.S. Court of Appeals for the Ninth Circuit (2002).

Member of:
American Immigration Lawyers Association; National Immigration Project; Arizona State Bar Association; 2002-2004 Vice-Chair of the Immigration Law Section of the Arizona State Bar Association.

## *Education*

*Juris Doctor,* Boston University School of Law, Boston, MA, May 2000, *cum laude*
International Law Concentration, with honors.
Managing Editor, Boston University International Law Journal, 1999-2000 academic year.

B.S., Political Sciences and Physics, University of California at Los Angeles, CA,
March, 1997, *cum laude*
Political Sciences Honors Program thesis: *The IMF and Brazilian Economic Austerity Programs.*

## *Volunteer Work*

**Sep. 2005 – Present        La Raza Immigration Clinic Volunteer, San Francisco, CA**
Volunteer as immigration lawyer at bi-weekly clinical meetings providing free legal counseling to immigrants.

**Aug. 2005 – Present        Lawyer's Committee for Human Rights – San Francisco, CA**
Mentor Attorney
Volunteer as Mentor attorney for volunteering attorneys who represent political asylum applicants before the Immigration Courts, Board of Immigration Appeals.

**Aug. 2005 – Present        International Institute of the East Bay – Oakland, CA**
Volunteer as immigration lawyer at bi-weekly clinical meetings providing free legal counseling to immigrants.

**Aug. 2005 – Present        EOIR-San Francisco Bar Association, San Francisco, CA**
Volunteer as immigration lawyer before the Immigration Court on behalf of the immigration court volunteer program of the San Francisco Bar Association providing free legal services to immigrants.

**Sep. 2007 – Oct. 2007    International Human Rights Law Outreach Project, Cairo, Egypt**
Volunteered with human rights organization in preparation of human rights law outreach seminars.

**Feb. 2006 – Sep. 2007    *Encontro Legal* at KUSF 90.3, San Francisco, CA**
1-hour live radio program addressing current and general issues of immigration law and answering live and prepared questions from host and listeners.

**Dec. 2000 – May 2004    Florence Immigrant & Refugee Rights Project, Florence, AZ**
Volunteer as immigration attorney representing detained clients before the Immigration Courts, Board of Immigration Appeals, and the Court of Appeals for the Ninth Circuit in select cases.

## *Guest Speaker*

Motion To Suppress Techniques – Immigration Legal Resource Center, May 2007,
Lectured on developing techniques on how to successfully apply motions to suppress in immigration courts following unlawful immigration raids.

Criminal Immigration Law Conference – Immigration Legal Resource Center, November 2005,
Lectured on selected topics on criminal immigration law to conference attendees comprising mainly of public defenders within the Ninth Circuit Court of Appeals jurisdiction, with  emphasis on Arizona law and statutes.

I & II Conferência sobre Imigração e Comunidade Brasileira na Costa Oeste dos Estados Unidos,
November 5 & 6, 2005, and November 4 & 5, 2006.
Guest speaker on selected topics regarding political asylum, removal procedures and
constitutional issues in immigration law.

Deportation Clinic Training, International Institute of the East Bay, Oakland, CA, October 2004,
Provided two-evening training on immigration defense law and procedure to
IIEB attorneys and staff.

Human Rights Clinic Training, Doctors of the World, April 29, 2003 and September 19, 2002,
Phoenix, AZ.
Lectured on immigration and refugee law at training program for volunteer doctors and
psychologists for Doctors of the World.

## *Awards*

Certificate of Appreciation for Pro Bono Legal Assistance 2005-2007, by International Institute
of the East Bay, Oakland, California, November, 2007.

*Top Pro Bono Attorneys in Arizona Award* presented by the Arizona Foundation for Legal
Services & Education, June 10, 2004.

Certificate of Appreciation for *Pro Bono* Legal Service, by Florence Immigrant & Refugee
Rights Project, October 16, 2003 and October 24, 2002.

## *Other*

Fluent in English, Portuguese, French, and Spanish.
Intermediate level German, Arabic (MSA and Colloquial Egyptian).
Beginner level Italian.
Traveled extensively in Latin America, Europe, Africa, and Asia.